UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**LAURA JIMENEZ**,                                            :
                                                              :
                      Plaintiff,     :
                                                              :    **MEMORANDUM DECISION**
        – against –                                     :    **AND ORDER**
                                                              :
**COMMISSIONER OF SOCIAL SECURITY**,                          :    19-CV-5367 (AMD)
                                                              :
                      Defendant.     :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff seeks review of the Social Security Commissioner's decision that she was not disabled for the purpose of receiving benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, I remand the case for further proceedings.

## BACKGROUND

      On March 16, 2015, the plaintiff applied for disability insurance benefits and supplemental security income, alleging disability because of panic disorder, depression, insomnia, herniated disc, pinched nerve, radiculopathy, sprained ankles, chest pain, difficulty breathing and allergies, with an onset date of September 15, 2013. (Tr. 380-81, 420, 424.)

      After her claims were denied, the plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (Tr. 254-58.) ALJ Yvette N. Diamond held a hearing at which a vocational expert and the plaintiff, who was represented by counsel, testified. (Tr. 196-227.) In a March 29, 2018 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 6-22.) She determined that the plaintiff had the following severe impairments: "degenerative disc disease, asthma, obesity, anxiety disorder, panic disorder, and depressive disorder," but that none of these impairments met or equaled the applicable listings. (Tr. 12-15.) She concluded that the plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b)" with limitations: she could perform "simple, routine tasks" and have "occasional contact with supervisors and coworkers, but no contact with the public." She could perform "low stress work" that requires "only occasional decision-making and . . . changes in the work setting." She could "lift and carry twenty pounds occasionally and ten pounds frequently," sit and stand or walk for six hours a day, and "frequently climb stairs, balance, stoop, kneel, crouch, crawl, and climb ladders," but could not have "concentrated exposure to hazards or respiratory irritants." (Tr. 15-20.) The ALJ found that the plaintiff could perform jobs in the national economy. (Tr. 21-22.)

On July 19, 2019, the Appeals Council denied the plaintiff's request for review. (Tr. 1-5.) The plaintiff filed this action on September 13, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 11, 17).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the court will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting *Townley v.*

*Heckler*, 748 F.2d 109, 112 (2d Cir.1984)). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

## DISCUSSION

The plaintiff claims that the ALJ's decision is not supported by substantial evidence. She challenges the ALJ's evaluation of the medical evidence, and says that the ALJ did not consider the full range of the plaintiff's conditions and whether they met a listing. She also challenges the ALJ's step five analysis. In addition, she claims that the Appeals Council did not properly consider the plaintiff's appeal, including evidence she submitted after the hearing. (ECF No. 17-1.)[1] The defendant maintains that the ALJ's decision was supported by substantial evidence and is free of legal error. (ECF Nos. 12, 19.)

**I.   RFC Determination**

The plaintiff objects to the ALJ's decision to give the opinions of the plaintiff's treating sources less than controlling weight. (ECF No. 17-1 at 16-19.) Remand is appropriate to allow the ALJ to reconsider the medical evidence and develop the record if necessary.

**a.   Opinions on Mental Limitations**

Two treating providers, one consultative examiner and one non-examining consultant submitted opinions on the plaintiff's mental limitations: treating nurse practitioner Carol Lieberman[2], treating therapist Rachael Figueroa, psychiatric consultative examiner Michael

---

[1] The plaintiff also asks the Court to consider the COVID-19 pandemic and high unemployment rate. While I am sympathetic to those facing hardships caused by the pandemic, the current pandemic is not relevant to the question of whether substantial evidence supports the Commissioner's decision that the plaintiff was not disabled during the relevant time period.
[2] Ms. Lieberman's opinion was co-signed by Dr. Sahar Abzakh. (*See* Tr. 861.)

3

Kushner, and non-treating non-examining consultant S. Hou.  The ALJ gave "great weight" only to Dr. Hou's opinion.  (Tr. 18-19.)

Carol Lieberman began seeing the plaintiff monthly in September of 2014.  In a psychiatric functional assessment dated December 18, 2017, she stated that the plaintiff "is not able to travel by herself [at] this time."  As a result, she "goes shopping with others" and is late for and misses appointments.  (Tr. 860-61.)  Ms. Lieberman did not give an opinion about the plaintiff's ability to function in a work setting because she "never observed [her] in the work setting."  (*See* Tr. 857.)

The ALJ gave "limited weight" to Ms. Lieberman's opinion because it provided "limited and non-specific information."  (Tr. 19.)

Psychotherapist Rachael Figueroa started treating the plaintiff on a bi-weekly basis in September of 2014.  (*See* Tr. 829.)  She opined on the plaintiff's conditions in two medical reports dated March 29, 2016.  (Tr. 829-842.)  In these reports, she noted the plaintiff's "severe panic attacks," difficulty "waking up due to feelings of anxiety and/or depression," inability to go out alone and "deal with conversations over the phone," difficulty concentrating and focusing, "crying spells," feelings of "being attacked," "fear of enclosed spaces," and "consistent episodes of anxiety and panic."  (Tr. 829, 831, 834, 837.)  She reported that the plaintiff "comes to each session either quite anxious, nervous, and with manic behavior."  (Tr. 833.)  She opined that the plaintiff had moderate to extreme limitations understanding, remembering and carrying out instructions, marked limitations interacting appropriately with supervisors, co-workers and the public, and extreme limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (Tr. 833-34, 839-42.)  She described the plaintiff's episodes of deterioration or decompensation as "continual," and said that she

4

anticipated that the plaintiff would be absent from work more than three times per month.  (Tr. 840.)

The ALJ gave "limited weight" to Ms. Figueroa's opinions because they were "inconsistent with the treatment evidence of record . . . , particularly the treatment records and mental status examinations performed by Ms. Lieberman, . . . which typically indicated the claimant's symptoms were improving and stabilizing with treatment, and noted much less variance in the [plaintiff's] functioning than her therapy records did."  (Tr. 19.)

In a consultative psychiatric evaluation report dated June 5, 2015, Dr. Michael Kushner noted the plaintiff's reports of "depressive symptoms including crying spells, feelings of hopelessness, low self-esteem," "social withdrawal and isolation," a "sense of impending doom," "anxiety that can develop into panic attacks . . . in closed-in spaces," "hypervigilance and fear of being attacked," and "concentration difficulties during panic attacks."  (Tr. 584-85.)  He described the plaintiff's demeanor and responsiveness as "fair to poor," and that she "present[ed] as highly anxious."  (Tr. 585.)  He opined that the plaintiff could perform simple directions and tasks, had "up to moderate limitations" "maintaining attention and concentration, maintaining a regular schedule, learning new tasks, [and] performing complex tasks under supervision," and "moderate to at times marked limitations" "relating adequately with others and appropriately dealing with stress."  (Tr. 586.)

The ALJ assigned "partial weight" to this opinion.  She gave "great weight" to the opinion that the plaintiff could perform simple directions and tasks, but "less weight" to the opinions about the plaintiff's moderate to marked limitations because they were inconsistent with "treatment evidence."  (Tr. 19.)

5

On July 14, 2015, Dr. S. Hou, a state agency psychiatric consultant who did not treat or examine the plaintiff, did a mental RFC assessment as part of the Disability Determination Explanation at the initial level of review. (Tr. 235-37, 247-49.) He opined that the plaintiff was "[n]ot significantly limited" in her ability to remember locations and work-like procedures, understand, remember and carry out "very short and simple instructions," and work with or around others without being distracted by them. He found that the plaintiff was "moderately limited" in her ability to understand, remember and carry out detailed instructions, "maintain attention and concentration for extended periods," and interact with the public.

The ALJ gave "great weight" to this opinion, concluding that "[a]lthough Dr. Hou is a non-treating, non-examining medical source, their opinion is based upon a thorough review of the available medical record and a comprehensive understanding of Agency rules and regulations." The ALJ found that the opinion was "internally consistent and well supported by a reasonable explanation and the available evidence." (Tr. 18-19.)

The treating physician rule "requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527. The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's

6

>opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527. Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted).

The ALJ gave both treating providers' opinions "limited weight;" she gave Ms. Figueroa's opinions limited weight because she found them inconsistent with the medical records, particularly Ms. Lieberman's, and gave Ms. Lieberman's opinion limited weight because it was "limited and non-specific."[3] The ALJ noted, among other things, that Ms. Lieberman's records showed that the plaintiff's symptoms improved. (Tr. 19.)

However, although the records show improvement at times, both providers' records include notes and observations that are consistent with their opinions. For example, Ms. Lieberman's records from September 3, 2014 note the plaintiff's reports of daily panic attacks and crying, and that the plaintiff's mood was "[d]epressed with feelings of hopelessness and . . . worthlessness." (Tr. 638-39.) On October 16, 2014, the plaintiff expressed fear of being harmed if she left the apartment, and on August 6, 2015, said that she did not "want to go out because[]

---

[3] Treating provider Ms. Figueroa is a licensed clinical social worker. *See Bonazelli v. Saul*, No. 19-CV-1566, 2021 WL 791176, at *4 (the treating physician rule does not apply to "licensed clinical social workers"). The ALJ did not reject Ms. Figueroa's opinion on this ground, and even if the treating physician rule does not apply to her, remand is appropriate for the ALJ to reevaluate the medical evidence, including Ms. Lieberman's opinion and records, and seek additional records or opinions as is necessary to develop the record.

7

she brings everyone down," that her depression had "gotten worse" and that she had been "staying in bed" and not showering. (Tr. 657-58, 773.) On July 27, 2017, Ms. Lieberman wrote that the plaintiff was "feeling stressed currently" and had been "crying more" and sleeping for only 4 hours at a time. (Tr. 1680.) In notes from April 13, 2015, Ms. Figueroa wrote that the plaintiff was "not improving" and "still ha[d] bouts of anxiety attacks." (Tr. 737.) Ms. Figueroa noted on July 28, 2017 that the plaintiff reported being "very anxious," had been feeling that way for "several weeks" and was not sleeping well; her mood was "anxious" and "depressed" and she had a "tearful" affect. (Tr. 1206.) Notes from September 29, 2017 state that the plaintiff "continue[d] to have frequent panic attacks" and was "very upset with family members." (Tr. 1228.) In December 8, 2017 notes, Ms. Figueroa wrote that the plaintiff continued to have anxiety and reported that "some days are worse than others." (Tr. 1246.) The records also note the plaintiff's late arrival to appointments. (*See, e.g.*, Tr. 1228, 1237, 1246.) These reports are also consistent with consultative examiner Dr. Kushner's opinion that the plaintiff had moderate to marked limitations relating with others and dealing with stress, which the ALJ gave "less weight" because she concluded that it was inconsistent with treatment records.

Because the ALJ found that Ms. Lieberman's opinion was not specific enough, she should have sought clarification before disregarding it.[4] *See McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *4 (E.D.N.Y. Feb. 13, 2020) ("The ALJ, while acknowledging that [two doctors] were Plaintiff's treating physicians, accorded 'partial weight' to their opinions because they 'did not provide any basis or reasoning to support their respective opinions.' However, since the ALJ deemed the treating physicians' opinions lacking in support, the ALJ should have

---

[4] The ALJ gave limited weight to Ms. Figueroa's opinion in part because it was inconsistent with Ms. Lieberman's records, but also gave Ms. Lieberman's opinion limited weight. Clarification from Ms. Lieberman might also affect the weight that the ALJ gives to Ms. Figueroa's opinion.

sought clarification from them regarding the deficiencies she perceived in their opinions.") (quoting the record).

Moreover, the ALJ gave "great weight" only to non-treating and non-examining consultant Dr. Hou's 2015 opinion. Dr. Hou did not have the benefit of reviewing the full set of records, nor did he see the plaintiff in person. Because Dr. Hou did not evaluate the later records or opinions, it appears that the ALJ based her decision to give the treating providers' opinions less than controlling weight on her own review of the medical records. *See Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion."); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018) (summary order) ("Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion. While a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)) (citations, quotation marks and alterations omitted).

    b.  **Opinions on Physical Limitations**

As for the plaintiff's physical limitations, the ALJ considered the opinions of treating podiatrist Dr. Jason Feinberg, treating dermatologist Dr. Pinkas Lebovits, and internal medicine consultative examiners Dr. Linell Skeene and Dr. Christian Sarra. The ALJ gave "partial" weight to Dr. Skeen's opinion, and "little" weight to the other doctors' opinions. (Tr. 18, 20.)

Dr. Feinberg provided a June 1, 2015 report on the plaintiff's ankle synovitis, noting her "chronic pain with numbness," and that she was given shoe inserts and a therapeutic injection.

9

(Tr. 432-40.) However, he only saw the plaintiff twice and did not opine on her functional capabilities. (*Id.*)

Similarly, Dr. Lebovits' December 12, 2017 report reflects that he only saw the plaintiff twice because the plaintiff was "new" to his practice. (Tr. 852-55.) He opined, however, that the plaintiff's condition—hidradenitis suppurativa[5]—was "recurrent" and "chronic," caused frequent flare-ups, limited her ability to move and raise her harms, and would interfere with her ability to attend work on a regular basis during flare-ups. (*Id.*)

The ALJ gave "little" weight to these opinions because the doctors "indicated that they were largely unable to opine on the [plaintiff's] functional limitations, given their areas of specialty and limited number of times treating the [plaintiff]," but "considered" the opinions in limiting the plaintiff to light work with limitations. (Tr. 18.) Assigning less than controlling weight to these opinions with limited explanation was not error because the treating physician rule generally does not apply when a plaintiff's contact with doctors is limited.[6] *See Ryan B. v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-1448, 2020 WL 6888100, at *11 (N.D.N.Y. Nov. 24, 2020) (a "physician who sees a patient only once or twice does not have a chance to develop an ongoing relationship with the patient and thus is generally not considered treating physician") (citing *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011)).

Dr. Skeene opined that the plaintiff had "moderate limitations for prolonged standing, walking, and heavy lifting due to limited ROM of the lumbar spine" (Tr. 592), and Dr. Sarra

---

[5] Hidradenitis suppurativa is a skin condition that causes painful lumps under the skin. The lumps can break open, or tunnels can form under the skin. (*See* ECF No. 17-1 at 9; ECF No. 19 at 7); Mayo Clinic, Hidradenitis suppurativa, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306.

[6] Dr. Lebovits, however, did give opinions about some functional limitations, casting some doubt on the ALJ's statement that both doctors indicated that they could not provide a functional assessment. The ALJ should clarify whether she considered Dr. Lebovits' functional assessment in the plaintiff's RFC.

found that the plaintiff would have some limitations lifting, standing, walking, pushing, pulling, kneeling and squatting, and that the plaintiff would be unable to work (Tr. 569, 573).  The ALJ explained the weight she assigned to each opinion, and was not required to give credence to Dr. Sarra's opinion that the plaintiff would be unable to work, an issue reserved for the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 77 (2d Cir. 2018) ("A bald statement that a claimant is 'disabled' represents an administrative finding, not a medical opinion.").

## II.     Listings Analysis

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," the ALJ must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1."  20 C.F.R.§ 404.1520(a)(4)(iii).  Each impairment in appendix 1 "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations.  *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998); *see* 20 C.F.R. §§ 404.1520(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

In her reevaluation of the medical evidence, the ALJ should reconsider whether the plaintiff's conditions meet a listing, particularly listing 12.04, which pertains to depressive, bipolar and related disorders, and listing 12.06, which pertains to anxiety and obsessive-compulsive disorders.  *See* 20 C.F.R. § 404, Subpt. P, App'x 1.  Paragraph B of both of these listings requires showing "extreme" limitation in one or "marked" limitation in two of the following areas: (1) understanding, remembering or applying information, (2) interacting with others, (3) concentration, persistence or maintaining pace, (4) adapting or managing oneself.

11

Paragraph C requires a showing that the disorder is "serious and persistent." The ALJ concluded that the criteria in paragraphs B and C of the listings were not met. She found that the plaintiff had mild limitations in the first and fourth areas, and moderate limitations in the second and third. (Tr. 13-14.) Had she given controlling weight to the treating providers' opinions— including Ms. Figueroa's opinion that the plaintiff had various marked and extreme limitations in the areas of understanding, remembering and carrying out instructions, interacting with others, performing activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace—she may very well have found that these listings were met. (*See* Tr. 833-34, 839-42.)

## III. Step Five Analysis

The plaintiff challenges the ALJ's reliance on vocational expert James Soldner's testimony.[7] She claims that his testimony is "suspect," and that the hypotheticals posed to the expert did not account for all of the plaintiff's conditions, but also that the testimony provides a basis for finding that the plaintiff was incapable of performing work. (ECF No. 17-1 at 14-16.)

The plaintiff describes the vocational expert's testimony as "suspect" because it is "hardly credible" that he reviewed the plaintiff's records in light of his other commitments. This claim is speculative. There is a sufficient basis in the record for the ALJ's reliance, as a general matter, on the expert's testimony. (*See* Tr. 349-68 (the vocational expert's resume lists extensive relevant experience)); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (an ALJ may credit a vocational expert's testimony if it was "given on the basis of the expert's professional experience and clinical judgment"). The plaintiff also claims that Soldner "acknowledged" that he was "unable to testify about [the plaintiff's] mental capacity" and "not expected to" testify about it.

---

[7] The hearing transcript refers to Mr. Soldner as Mr. Pilner, as do the parties.

12

This is not what Soldner said.  He testified that he was "not expected" to testify about the "level of depression" of other people who were placed in mail clerk positions; he did not express hesitance to opine on the plaintiff's suitability for these positions.  (Tr. 222.)

Nevertheless, when the ALJ reassesses the medical evidence and the plaintiff's residual functional capacity, she should also assess whether the plaintiff's limitations are different from those of the hypothetical claimant upon whom she based her conclusions at step five.  *See Baker v. Berryhill*, No. 17-CV-8433, 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019) ("A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant."), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019); *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (the Commissioner may rely on a vocational expert's opinions concerning a hypothetical claimant so long as the ALJ's hypothetical mirrors the plaintiff's RFC and is based on substantial evidence).  For example, Ms. Figueroa and Ms. Lieberman discussed the plaintiff's limitations in leaving the house alone, as well as her problems with lateness and the potential for absences from work; if credited, these limitations should be reflected in the hypotheticals posed to the vocational expert.  If necessary, the ALJ should ask the vocational expert to reevaluate the plaintiff's vocational options.

### IV. Review by Appeals Council

The plaintiff claims that the Appeals Council did not "seriously consider" records from SUNY Downstate Medical Center that the ALJ did not consider, or the issues that the plaintiff raised in her appeal.  (ECF No. 17-1 at 20.)

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that

13

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). Evidence is "new" if the Commissioner has not considered it previously and it is "not merely cumulative of what is already in the record." *Corona v. Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *19 (E.D.N.Y. Mar. 24, 2017) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)) (internal quotation marks omitted). "New evidence is considered material if (1) it is relevant to the claimant's condition during the time period for which benefits were denied, (2) it is probative, and (3) there is a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently." *Id.* (quoting *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007)) (internal quotation marks omitted).

The plaintiff does not explain why the SUNY records would change the Commissioner's decision. (*See* Tr. 36-188.) The records, however, reflect that the plaintiff has eczema, GERD, "disabling pain" caused by her herniated lumbar disc and symptoms that have "worsened" since the plaintiff hurt her back and gained weight, and might have influenced the ALJ's decision. (*See, e.g.*, Tr. 48, 55, 57, 66, 74, 88, 127.) At the very least, they provide a more complete picture of the plaintiff's conditions, and the ALJ should consider them on remand.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                        s/Ann M. Donnelly
                                            _____
                                            ANN M. DONNELLY
                                            United States District Judge

Dated: Brooklyn, New York
       March 30, 2021